UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHEGG, INC.

                *Plaintiff*,

v.

GOOGLE LLC and ALPHABET INC.,

                *Defendants*.

Case No. 1:25-cv-00543-APM

**REPLY IN SUPPORT OF DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

Google's Request for Judicial Notice appropriately requests notice of facts appearing in an SEC filing and various websites that are "not subject to reasonable dispute" because those facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Hurd v. Dist. of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (quoting Fed. R. Evid. 201(b)). Courts routinely take judicial notice of facts contained in sources like the ones Google provided. *E.g.*, *DiLorenzo v. Norton*, 2009 WL 2381327, at *2 n.7 (D.D.C. July 31, 2009) ("SEC filings … are properly the subject of judicial notice."); *Arroyo v. Davi, LLC*, 2022 WL 256867, at *2 (E.D. Cal. Jan. 27, 2022) (granting judicial notice of "screenshots of the Hotel's webpages"). Chegg does not dispute the sources' veracity, but instead disagrees with the legal arguments that Google makes in its Motion to Dismiss (Motion) based on these facts. That is not a valid basis for disputing judicial notice. Google's Request for Judicial Notice should be granted.

**ARGUMENT**

Chegg contends that Google insufficiently specified the facts for which it asks the Court to take judicial notice and that the facts Google has identified are not reasonably free from dispute or are irrelevant. Dkt. 20-1 (RJN Opp.) at 2-5. As explained below, however, Google's Motion clearly

identifies specific facts and statements—all of which are relevant and not subject to reasonable dispute—that can be found in the exhibits attached to the Request for Judicial Notice.

**Exhibit 1 (Chegg 2024 10-K).** Google asks this Court to take judicial notice of Chegg's 2024 10-K, and points to specific statements from Chegg's 2024 10-K in the Motion. In particular, Google noted in its Motion that Chegg's 10-K shows that "Chegg has experienced four years of declining revenues" and has "lost 1.5 million subscribers since 2022," and includes statements showing that Chegg recognized that "[t]he growing popularity of generative AI chatbots like OpenAI's ChatGPT threatens Chegg's subscription business" and "students [are] increasingly turning to generative AI for academic support, such as homework and exams." Dkt. 19-1 (Mot.) at 6-7, 24-25. In opposition, Chegg argues that the Court should not accept the truth of the statements in the 10-K. RJN Opp. 3-4. As an initial matter, courts in this circuit routinely take judicial notice of facts like these that are "verifiable with certainty," *BYD Co. v. All. for Am. Mfg.*, 554 F. Supp. 3d 1, 13 (D.D.C. 2021), *aff'd*, 2022 WL 1463866 (D.C. Cir. May 10, 2022) (quoting *Johnson v. Comm'n on Pres. Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016)), especially when the party opposing judicial notice "does not dispute the[ir] validity." *Id.* For that reason, courts take judicial notice of uncontroverted and verifiable facts stated in a 10-K. *See Nwosu v. Hewlett Packard Enter. Co.*, 2025 WL 1744582, at *1 & n.1 (D.D.C. Feb. 7, 2025). Here, Chegg does not dispute the accuracy of the representations it made in its own 10-K about declining revenues and subscribers—nor could it.

Chegg suggests that courts may judicially notice facts contained in SEC filings only when those filings are incorporated by reference into a plaintiff's complaint. RJN Opp. 5-6. But that is not the law. As one court in this district has explained, "[b]ecause SEC filings are matters of public record, they are properly the subject of judicial notice, and therefore the Court may, and will,

consider them on review of defendants' motion to dismiss." *DiLorenzo*, 2009 WL 2381327, at *2 n.7 (citing *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993)). Nothing in that decision turned on the fact that the 10-K was incorporated by reference. Other courts have similarly taken judicial notice of facts contained in a 10-K even when those filings were not incorporated by reference into a pleading. *See, e.g.*, *Nwosu*, 2025 WL 1744582, at *1 & n.1; *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 530 (W.D. Pa. 2019); *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, 2010 WL 1253891, at *6 (N.D. Ind. Mar. 29, 2010); *Costello v. Bank of Am., N.A.*, 2014 WL 293665, at *2 n.2 (D. Mass. Jan. 27, 2014), *aff'd sub nom. Bishay v. Bank of Am., N.A.*, 2015 WL 13927033 (1st Cir. Nov. 9, 2015).

Even if the Court does not take judicial notice of the facts contained in Chegg's 10-K, it certainly may take judicial notice of the fact that Chegg *made these representations* in the 10-K. *See DiLorenzo*, 2009 WL 2381327, at *2 & n.7. As Google explained in its Motion, the fact that Chegg made these statements itself supports the lack of plausibility of Chegg's claims. *See, e.g.*, Mot. 24-25. For example, Google noted that even Chegg acknowledges the threat to Chegg's business posed by non-Google generative AI chatbots, which undermines Chegg's theory that Google's AI summaries caused its alleged injuries. *See id*. It is therefore enough for the Court to consider the fact of Chegg's representations.

Chegg's real gripe is with the impact of these undisputed facts on the viability of its pleadings. But that is not a valid objection to judicial notice. Google does not, as Chegg claims, ask the Court to take notice that "Google's anticompetitive conduct played no role in Chegg losing search traffic and subscribers." RJN Opp. 3. Instead, Google seeks judicial notice of specific statements from Chegg's 10-K, and it is plainly appropriate for this Court to take notice of these "highly relevant and easily verifiable fact[s]." *Mintz v. F.D.I.C.*, 729 F. Supp. 2d 276, 278 n.2

3

(D.D.C. 2010). Whether Chegg's representations in its 10-K undermine Chegg's theory is a question for the Court to decide, but it does not impact whether judicial notice is appropriate.

*Exhibit 2 (Chegg webpage).* Google's Motion specifically describes two representations that Chegg makes on its website from Exhibit 2: that "Chegg's main offering is called 'Chegg Study'" and that Chegg offers subscription packages priced at $15.95 and $19.95 per month. Mot. 6. Chegg argues that the "details regarding Chegg Study" that Google cites in Exhibit 2 are "irrelevant to the resolution of Google's motion to dismiss" and therefore inappropriate for judicial notice. RJN Opp. 4. But these "details" simply describe the nature of Chegg's subscription-based business model. That model lies at the heart of Chegg's theory of antitrust standing and its overarching theories of liability. *See, e.g.*, Dkt. 20 (MTD Opp). 24, (claiming that Chegg has antitrust standing based on Chegg's lost subscription revenue); Dkt. 18 (FAC) ¶ 139 (alleging that "Google's misappropriation of Chegg's content to train and ground its AI models, and the way that misappropriation allows Google to publish its own content—which in turn diminishes traffic to Chegg's and other publishers' sites—threatens the very core of Chegg's business"). The facts that Google points to from Chegg's website again call into question Chegg's theories of standing and liability because they indicate that Chegg's primary offerings are relatively high-cost substitutes for low-cost or free generative AI chatbots and are thus vulnerable to substitution. *See* Mot. 1, 7, 24-25.

Confusingly, Chegg also suggests that Exhibit 2 is inappropriate for judicial notice because courts can take judicial notice of websites only when their "existence and content [are] undisputed." RJN Opp. 6. Chegg does not dispute the pricing of its subscription packages, or that its website is a "source[] whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), as to representations that Chegg has made about its pricing. Courts routinely take

4

judicial notice of webpages in similar circumstances. *See, e.g.*, *Mundo Verde Pub. Charter Sch. v. Sokolov*, 315 F. Supp. 3d 374, 381 n.3 (D.D.C. 2018) ("The court may take judicial notice of representations made on Plaintiff's website."); *Phillips v. Spencer*, 390 F. Supp. 3d 136, 145 n.3 (D.D.C. 2019) (taking judicial notice of representations made on a website); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1053-1054 (N.D. Cal. 2025) (granting judicial notice of webpages from a party's website, including "screens showing the account creation and purchase process").

**Exhibit 3 (Quizlet webpage).** In its Amended Complaint (FAC), Chegg references Quizlet as a participant in its alleged Online Educational Publishing (OEP) market. FAC ¶ 57. Google sought judicial notice of a Quizlet webpage, and noted in its Motion that Quizlet advertised itself as offering a way for users to create flashcards. *See* Mot. 35-36.

Chegg argues that the webpage "says nothing about the scope of Quizlet's product offerings" and does not "state the extent to which Quizlet flashcards are 'user created,'" RJN Opp. 4-5, even though the webpage expressly states that Quizlet is "[t]he easiest way to make and study flashcards," provides an option for users to "make flashcards," states that "[c]reating your own set of flashcards is simple with our free flashcard maker," and reports "[o]ver 500 million flashcards created." Ex. 3 at 1. Thus, the webpage establishes that Quizlet markets itself as a resource for users to create flashcards.

Rather than meaningfully challenge these judicially noticeable statements on Quizlet's webpage, Chegg primarily takes issue with the showing Google makes in its Motion. *See* RJN Opp. 4 ("Google cites Exhibit 3 to argue that 'it is implausible' that Chegg's competitor Quizlet competes in the Online Educational Publishing market as defined in Chegg's Complaint."). To the extent that Chegg disagrees with Google's point that Quizlet's flashcards "do not appear to be verified, curated, or based on any kind of authority," Mot. 36 (internal quotation marks omitted),

5

or that this inference indicates that Quizlet does not compete in the OEP market as defined by Chegg, *id.* at 35-36, it should have made those arguments in its Opposition to Google's Motion, not in its Opposition to Google's Request for Judicial Notice. Regardless, even if some user-generated content "*can* have the attributes of Online Educational Publishing," RJN Opp. 5 (emphasis added), such user-generated content is plainly not *necessarily* "verified," "curated," or based on "authority," further demonstrating the non-viability of Chegg's alleged OEP market, to the extent it purports to include Quizlet. Mot. 35-36.

Chegg also makes the same flawed argument about a lack of authentication and the verifiability of contents as it did with regard to Exhibit 2. *See* RJN Opp. 6. That objection fails here for the same reason: Just as representations on Chegg's website are judicially noticeable, Quizlet's homepage is a source of readily verifiable facts about representations that Quizlet, a supposed competitor that Chegg identifies in its Amended Complaint, has made concerning its offerings, and Chegg does not challenge the accuracy of the reproduction of the webpage in Exhibit 3. *See, e.g.*, *Steinarsdottir v. Tripscout, Inc.*, 2024 WL 1532587, at *4 n.1 (D.D.C. Apr. 9, 2024) (stating that a court may take judicial notice of websites that "are publicly accessible" and when "there is no dispute as to [their] authenticity.") (quotation omitted); *Doe v. Roman Cath. Diocese of Greensburg*, 581 F. Supp. 3d 176, 199 (D.D.C. 2022) ("The Court takes judicial notice of the Parish's website."); *Lakes,* 777 F. Supp. 3d at 1053 ("[W]ebsites and their contents may be proper subjects for judicial notice.") (citation omitted).[1]

---

[1] Chegg attempts to distinguish *Steinarsdottir* and *Lakes* on the bases that they involved content whose "existence and content was undisputed" and that "gave rise to a claim or defense in the case." RJN Opp. 6. Neither argument is tenable. Chegg does not dispute that Exhibit 3 accurately captures the contents of Quizlet's webpage. And even if supporting a claim or defense were a prerequisite for taking judicial notice—which it is not—Google argues that Quizlet's undisputed reliance on user-generated flashcards undermines Chegg's claim that there exists an OEP market. *See, e.g.*, FAC ¶¶ 2, 54-62; Mot. 33-36.

Because these facts and statements are proper subjects of judicial notice, Chegg's offhand suggestion that Google's Motion should be converted to a summary judgment motion, RJN Opp. 7, is meritless. In any event, the Court should not convert Google's Motion into a motion for summary judgment; even the case that Chegg cites for the proposition states that that option "should be exercised with great caution," *Hurd*, 864 F.3d at 687 (citation omitted). Instead, the Court can disregard any fact or statement for which the Court concludes it cannot take judicial notice, and dismissal is still warranted.

## CONCLUSION

Google's Request for Judicial Notice should be granted.

Dated: September 19, 2025

Respectfully submitted,

By: */s/ Sonal N. Mehta*
Sonal N. Mehta*
Chris Johnstone*
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
sonal.mehta@wilmerhale.com
chris.johnstone@wilmerhale.com
*Admitted Pro Hac Vice*

David Gringer (Bar No. 1001200)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
david.gringer@wilmerhale.com
*Counsel for Defendants Google LLC & Alphabet Inc.*